**DISTRICT OF OREGON**
**F I L E D**
**July 02, 2026**
**Clerk, U.S. Bankruptcy Court**

Below is an opinion of the court.

_____
PETER C. McKITTRICK
U.S. Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| In re | Case No. 26-30615-pcm11 |
| BULLIVANT HOUSER BAILEY PC, | |
| Debtor. | MEMORANDUM DECISION[1] |

The dispute in this case is whether a claim for breach of a pre-petition contract obligating the debtor to repurchase the creditor's shares is allowable as a general unsecured claim or, instead, mandatorily subordinated under § 510(b).[2] For the reasons stated below, the court concludes that the claim is subject to mandatory subordination under the Bankruptcy Code.

---

[1]  This disposition is specific to this case and is not intended for publication or to have a controlling effect on other cases.  It may, however, be cited for whatever persuasive value it may have.

[2]  Unless otherwise indicated, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. § 101 et seq.

Page 1 – MEMORANDUM DECISION

FACTUAL BACKGROUND

Thomas Hutchinson (Creditor) filed Claim No. 25 (the Claim) on April 13, 2026, asserting that he is owed $28,001.93 by the debtor, Bullivant Houser Bailey P.C. (Debtor).[3] The basis of the Claim is a breach of contract.[4]

Creditor is a former employee and shareholder of Debtor.[5] As a shareholder, Creditor was a party to a Buy-Sell Agreement with Debtor (the Agreement).[6] The Agreement obligated Debtor to pay $100,000 for Creditor's shares if Creditor became disabled or retired.[7] The Agreement provides that payment for the shares will be made in twelve equal quarterly installments beginning sixty days after the date of retirement or a determination of disability.[8]

Creditor claims that he became disabled on March 15, 2024.[9] Debtor, however, commenced making equal installment payments sixty days after Creditor retired on October 31, 2024.[10] Creditor ultimately received only three payments before Debtor filed bankruptcy in December of 2025.[11] Creditor contends that

---

[3]     Case No. 26-30615-pcm11, Claim No. 25-1.

[4]     *Id.*

[5]     *Id.*, Ex. 2.

[6]     *Id.*, Ex. 1.

[7]     *Id.*

[8]     *Id.*

[9]     ECF No. 202, p.2.

[10]    *Id.*, p. 3.

[11]    *Id.*, p. 10.

three additional payments totaling $25,000 were due between the date payments should have commenced and the date he received his first payment.[12]  Debtor maintains it complied with the Agreement by commencing payments sixty days after Creditor's retirement in October of 2024.[13]

In November of 2025, Creditor filed a breach of contract complaint in Multnomah County Circuit Court, seeking recovery of the three payments.[14]  Shortly thereafter, Debtor filed its chapter 11 petition.[15] Creditor, in the Claim, seeks recovery of the three payments plus interest.[16]

Debtor filed an objection to the Claim, arguing that it should be allowed only as a Class 4 former shareholder claim under the Second Amended Plan of Liquidation because it is subject to mandatory subordination under 11 U.S.C. § 510(b).[17]  Creditor filed a response to the objection, arguing that the Claim is not subject to mandatory subordination because it "is not a claim for legal damages that the Court must determine in terms of value or amount, it is for the payment of past due payments of fixed amounts."[18] Debtor filed a reply to Creditor's response.[19]  The court held a preliminary hearing at which it indicated it

---

[12]     *Id.*, p. 11.

[13]     ECF No. 178, Attachment A, p. 2.

[14]     Claim No. 25-1, Ex. 3.

[15]     ECF No. 1.

[16]     Claim Nos. 25-1.

[17]     ECF No. 178, Attachment A, p. 1.

[18]     ECF No. 202, p.2.

[19]     ECF No. 211.

Page 3 – MEMORANDUM DECISION

would either rule based on the record or set a further hearing.  The court determines that a further hearing is not necessary.[20]

## JURISDICTION

Federal subject-matter jurisdiction exists under 28 U.S.C. § 1334.  This is a core proceeding under 28 U.S.C. § 157(b)(2)(A) and (O).

## ANALYSIS

The Bankruptcy Code provides for mandatory subordination of certain claims, causing the subordinated claimant to receive a distribution junior in priority to its nominal class.  4 Collier on Bankruptcy ¶ 510.01 (Alan N. Resnick & Henry J. Sommer eds., 16th ed.).  Section 510(b) provides, in relevant part:

> For the purpose of distribution under this title, a claim . . . for damages arising from the purchase or sale of . . . a security . . . shall be subordinated to all claims or interests that are senior to or equal to the claim or interest represented by such security.

§ 510(b).  The parties do not dispute that Creditor's shares are "securities" for the purposes of § 510(b). *See* § 101(49).  The parties also do not dispute that the Agreement obligated Debtor to repurchase Creditor's shares and that the Claim is based upon Debtor's alleged failure to make three installments due under the Agreement.  The principal dispute is whether the Claim is for "damages arising from the purchase or sale of a security."

In the context of § 510(b), the term "damages arising from the purchase or sale of a security" has broader application than compensation for an injury or some other actionable wrongdoing. *In re Tristar Esperanza Props., LLC*, 782 F.3d 492, 495 (9th Cir. 2015).  It "sweeps broadly" and includes "ordinary

---

[20]    LBR 7007-1(d), made applicable to contested matters by LBR 9013-1(a)(5).

Page 4 – MEMORANDUM DECISION

breach of contract claims so long as there is a sufficient nexus between the claim and the purchase [or sale] of securities." *Id*.

In *Tristar*, the creditor, O'Donnell, exercised her right to withdraw her interest in Tristar, and Tristar elected to repurchase her interest pursuant to the terms of its operating agreement. *Id.* at 494. The parties disagreed about the value of the interest and proceeded to arbitration. *Id.* When Tristar failed to pay the arbitration award, O'Donnell obtained a state-court judgment against Tristar. *Id.* Tristar then filed for chapter 11 bankruptcy and commenced an adversary proceeding to subordinate O'Donnell's claim under § 510(b).

The Ninth Circuit rejected O'Donnell's argument that her claim was not subject to subordination because it had been reduced to judgment, stating that "the status of the claim on the date of the petition does not end the § 510(b) inquiry." *Id.* at 497. It reasoned that O'Donnell's "basic claim is that Tristar failed to pay her the amount she was due under Tristar's operating agreement for the purchase of her membership interest. This is a claim for damages for Tristar's breach of contract." *Id.* at 495. Therefore, O'Donnell's claim was for "damages arising out of" Tristar's obligation to purchase her shares and was subject to mandatory subordination under § 510(b). *Id*. at 498.

Like O'Donnell's claim in *Tristar*, Creditor's claim in this case arises "from the firm's subsequent failure to perform a contractual duty"[21] to pay Creditor for his shares. Therefore, the Claim is for damages, and the damages arise out of a purchase or sale of a security.

Claims for damages caused by events unrelated to the purchase or sale of securities, on the other hand, are not subordinated under § 510(b). *In re Khan*, 846 F.3d 1058, 1065 (9th Cir. 2017). In *Khan*, the

---

[21]     ECF No. 202, p. 7.

creditor, Barton, a former employee and shareholder of the debtors' company, had obtained a state court judgment against two debtors for conversion of the creditor's company shares. *Id.* at 1061. Barton filed claims in the debtors' chapter 13 bankruptcy cases for the damages awarded by the state court. *Id.* at 1062. The debtors objected to Barton's claims, arguing that the damages award arose from the sale or purchase of securities under § 510(b). *Id.*

The Ninth Circuit agreed with the bankruptcy court's decision to overrule the objection, stating that the "separate wrongdoing of the Debtors had no connection to the purchase or sale of [the creditor's] shares of stock. . . ." *Id*. at 1065. It reasoned that no connection existed because the creditor's state court action "did not arise out of the purchase of the securities and the risks that the purchase might entail." *Id.* Citing *In re Betacom of Phx., Inc.*, 240 F.3d 823, 829 (9th Cir. 2001), the court in *Khan* held that subordination of the creditor's claim would not align with the policy rationale of § 510(b). In *Betacom,* the Ninth Circuit stated that "dissimilar expectations of investors and creditors should be taken into account in setting a standard for mandatory subordination." 240 F.3d at 829.

Unlike in *Khan*, Creditor's claim here is based on his bargained-for rights under the Agreement. The origin of Creditor's claim is related to his risk as a shareholder. Indeed, in state court, Creditor asserted a claim for breach of contract, not for an unrelated tort.

Creditor attempts to distinguish this case on the basis that his shares in Debtor did not have a profit-and-loss component.[22] The statute makes no such distinction; "[s]ection 510(b) does not ask what the claim *is*, but what it *arises from*." *Tristar,* 782 F.3d at 497 (emphasis in original). Here, Creditor's claim for breach of contract arose from Creditor's equity position in Debtor and Debtor's contractual obligation to

---

[22]    ECF No. 202, p. 7.

Page 6 – MEMORANDUM DECISION

compensate Creditor for that equity.  Therefore, the substance of the Claim is a request for a distribution on account of an equity interest.  The Claim must be subordinated under § 510(b) to "'effectuate[] one of the general principles of corporate and bankruptcy law:  that creditors are entitled to be paid ahead of shareholders in the distribution of corporate assets.'"  *In re Del Biaggio*, 834 F.3d 1003, 1008 (9th Cir. 2016) (quoting *In re Am. Wagering, Inc.*, 493 F.3d 1067, 1071 (9th Cir. 2007)).

CONCLUSION

For the reasons stated above, the court concludes that the Claim is subject to mandatory subordination under § 510(b).  Debtor's counsel must submit an order within 14 days of entry of this decision.

###

Page 7 – MEMORANDUM DECISION